UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE LUIS ALEJANDRO-BERNABE,<br><br>Petitioner,<br><br>v.<br><br>WILLIAM P. BARR, et al.,<br><br>Respondent. | CASE NO. C20-1463-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner filed a writ of habeas corpus under 42 U.S.C. § 2241 in which he requests the Court order his immediate release from immigration custody. Dkt. 5. The government contends the Court should deny relief and dismiss the habeas petition, because petitioner is lawfully detained. For the reasons below, the Court recommends the petition be **DENIED** and the case be **DISMISSED** with prejudice.

Petitioner alleges he has been detained at the Northwest Immigration and Customs Processing Center (NWIPC) since February 20, 2019, is facing deportation based upon his criminal history, and that his removal is pending review in the Bureau of Immigration Appeals (BIA). Petitioner claims his case is governed by 8 U.S.C. § 1226 (a), not § 1226 (c) because the latter provision was intended to apply only to cases involving detention lasting "roughly a month and a half, and because he believes his removal proceedings are final, notwithstanding his

REPORT AND RECOMMENDATION - 1

pending BIA appeal. Dkt. 5 at 4. As relief, he asks the Court to order him immediately released. *Id.* at 2.

On December 10, 2020, respondents filed a return and motion to dismiss and supporting declarations. Dkts. 8, 9, 10. Respondents contend petitioner is a native and citizen of Mexico, entered the United States in 1989 and has committed and been convicted of numerous crimes. Respondents submit in June 2018, petitioner pled guilty to: (1) First Degree Rendering Criminal Assistance; (2) Residential Burglary–Domestic Violence; (3) Third Degree Assault–Domestic Violence; (4) Third Degree Assault; (5) Felony Harassment of Another–Threat to Kill; (6) Felony Harassment of Another–Threat to Kill; (7) Second Degree Malicious Mischief; and (8) Unlawful Imprisonment. Dkt. 8 citing Dkt. 9, Bohl Decl., ¶ 4, Ex. B. Respondents aver the state court sentenced petitioner to 29.75 months to be served concurrently for the foregoing criminal offenses. *Id.* at ¶ 5, Ex. C.

After petitioner completed his criminal sentences, ICE took custody of him on February 19, 2019, and served notice of removability alleging petitioner was removable because he had been convicted of aggravated felony crimes. Petitioner was transferred to NWIPC the next day. A bond hearing was scheduled for March 25, 2019 but the hearing did not occur because petitioner withdrew his request for the hearing. However, in May 2019, petitioner denied the charges he was removable. The parties briefed the issue and appeared before an immigration judge (IJ) in June 2019. At the hearing petitioner conceded he was removeable. He subsequently filed an application to adjust his status and for relief from removal; the IJ denied the request and ordered petitioner to be removed. Petitioner appealed the IJ's denial to the BIA and the appeal is still pending.

Respondent's return and motion to dismiss was noted for January 1, 2020 for the Court's

REPORT AND RECOMMENDATION - 2

consideration. Petitioner has not filed a reply to respondent's motion and the matter is thus ripe for review.

### DISCUSSION

Petitioner contends he should be released under 8 U.S.C. § 1226(a), and because his continued detention violates Due Process.

**A.    Immigration Law Framework**

Petitioner contends 8 U.S.C. § 1226(a) governs his case; Respondents disagree arguing 8 U.S.C. § 1226(c) governs the case. As discussed below, respondent is correct that § 1226(c) governs this case. Federal immigration law permits removal of aliens present in this country if they fall "within one or more ... classes of deportable aliens." 8 U.S.C. § 1227(a). Under § 1226(a), the Secretary of Homeland Security is authorized to arrest and hold an alien "pending a decision on whether the alien is to be removed from the United States."

Section 1226(a) also grants the Secretary the discretion either to detain the alien or to release him on bond or parole. If the alien is detained, he may seek review of his detention by an officer at the Department of Homeland Security and then by an IJ, *see* 8 CFR §§ 236.1(c)(8) and (d)(1), 1003.19, 1236.1(d)(1) (2018). The alien may secure his release if he can convince the officer or IJ he poses no flight risk and no danger to the community. *See* §§ 1003.19(a), 1236.1(d); *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006). Although 8 U.S.C. § 1226(a) generally allows an alien to seek release in this way, the section also contains a provision making release of an alien subject to the exception below that is contained in § 1226(c).

Section 1226(c) was enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. It arose from a "concer[n] that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large

REPORT AND RECOMMENDATION - 3

numbers." *Demore v. Kim*, 538 U.S. 510, 513 (2003). To address this concern, Congress mandated that aliens who pose a heightened risk be arrested and detained without a chance to apply for release on bond or parole.

Section 1226(c) consists of two paragraphs, one regarding taking an alien into "[c]ustody" and the other regarding the alien's subsequent "[r]elease." The paragraph on custody sets out four categories of covered aliens, namely, those who are inadmissible or deportable on specified grounds. It then provides the Secretary of Homeland Security must take any alien falling into one of these categories "into custody" "when the alien is released" from criminal custody.

Petitioner does not argue that his felony convictions are not aggravated felonies and that he should not have been brought into immigration custody under 8 U.S.C § 1226(c). Rather, he argues that his immigration detention has now moved from § 1226(c) to § 1226(a) under *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008). Dkt 5 at 3-4. Respondent correctly points out the shift from § 1226(a) to § 1226(c) occurs only after an alien's removal proceedings have concluded or are final. *See Casas-Castrillon*, 535 F.3d at 948 ("Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended and that authority shifted instead to § 1226(a)."). Hence *Casas-Castrillon* does not support petitioner's argument because petitioner's removal is not final; in fact, petitioner himself avers that the determination regarding his removal is still pending before the BIA. Accordingly, petitioner is mandatorily detained under 8 U.S.C § 1226(c).

**B.  Due Process**

Petitioner also contends his continued detention is "excessive" because he has been confined for "583 days." Dkt. 5 at 6. Respondent contends petitioner's continued detention does

REPORT AND RECOMMENDATION - 4

not violate due process under the test articulated in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Dkt. 8 at 5. Under the *Mathews* test, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id., at 333 (internal quotation marks omitted). This calls for an analysis of (1) private interests, (2) governmental interests, and (3) the probable value of additional procedural safeguards. *Id*., at 334-35.

In cases involving § 1226(c), judges in this District have utilized the test articulated in *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019), *R. & R. adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Under the *Martinez* test the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 9 (citing, *inter alia*, *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)). The *Martinez* factors are derived from the Supreme Court's decisions in *Demore v. Kim*, 538 U.S. 510 (2003), and *Zadvydas v. Davis*, 533 U.S. 678 (2001), and other circuit court cases holding, as a matter of constitutional avoidance, § 1226(c) implicitly authorizes detention for only a reasonable amount of time. *See Reid v. Donelan*, 819 F.3d 486, 494 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 222-23 (3d Cir. 2011), *abrogated by Jennings*, 138 S. Ct. 830; *Ly v. Hansen*, 351 F.3d 263, 269-70 (6th Cir. 2003), *abrogated by Jennings*, 138 S. Ct. 830); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018).

Consistent with the decisions of other judges in this District, the Court applies the *Martinez* factors to address petitioner's request for a bond hearing.

*1.    Length of Detention to Date*

The length of detention is the most important factor. *E.g.*, *Martinez*, 2019 WL 5968089, at *9; *Sajous*, 2018 WL 2357266, at *10 (citing *Zadvydas*, *Sopo*, and *Diop*). The longer mandatory detention continues beyond the "brief" period authorized in *Demore*, the harder it is to justify. *See, e.g.*, *Martinez*, 2019 WL 5968089, at *9 (nearly 13-month detention weighed in favor of granting a bond hearing); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 963-64 (D. Minn. 2019) ("Although there is no bright-line rule for what constitutes a reasonable length of detention, Petitioner's [12-month] detention has lasted beyond the 'brief' period assumed in *Demore*."); *Sajous*, 2018 WL 2357266, at *10 ("[D]etention that has lasted longer than six months is more likely to be 'unreasonable', and thus contrary to due process, than detention of less than six months."). Petitioner has been held in ICE custody since February 2019, nearly 22 months. The length of detention weighs in favor of granting petitioner a bond hearing.

*2.    Likely Duration of Future Detention*

The Court next "considers how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. Petitioner presents no argument about what action he will take after the BIA issues a decision. However, he will have the opportunity to file a petition for review with the Court of Appeals for the Ninth Circuit, which may not be resolved for years. According the Court of Appeals' public website, oral argument in a civil case may not be set for 12-20 months from the time the notice of appeal was

1  filed; following argument, the Court of Appeals may take 3 months to a year to decide the case.
2  *See* U.S. Court of Appeals for the Ninth Circuit, Frequently Asked Questions,
3  www.ca9.uscourts.gov/content/faq.php (last visited 12/27/20). Accordingly, this factor weighs in
4  petitioner's favor.

       3.     *Length of Criminal Sentence and Facts of Criminal Conviction*

The third and fourth factors the Court reviews are the length of detention compared to petitioner's criminal sentence and the nature of his crime. *Martinez*, 2019 WL 5968089, at *9; *Cabral*, 331 F. Supp. 3d at 262. Petitioner was sentenced to nearly 30 months of imprisonment for (1) First Degree Rendering Criminal Assistance; (2) Residential Burglary–Domestic Violence; (3) Third Degree Assault–Domestic Violence; (4) Third Degree Assault; (5) Felony Harassment of Another–Threat to Kill; (6) Felony Harassment of Another–Threat to Kill; (7) Second Degree Malicious Mischief; and (8) Unlawful Imprisonment. (1) First Degree Rendering Criminal Assistance; (2) Residential Burglary–Domestic Violence; (3) Third Degree Assault–Domestic Violence; (4) Third Degree Assault; (5) Felony Harassment of Another–Threat to Kill; (6) Felony Harassment of Another–Threat to Kill; (7) Second Degree Malicious Mischief; and (8) Unlawful Imprisonment. Dkt. 9, Bohl Decl., ¶ 4, Ex. B.

According to the statement of probable cause in support of the charges, petitioner and another individual (the suspects) forced their way into a family members home armed with a pocket-knife. *Id.*, Ex. A. Both suspects were drinking before attacking the victim, who was asleep. The victim was grabbed and stabbed in the leg and also received deep cuts to his left hand when he grabbed the suspects' knife. *Id.* It is possible but unclear whether petitioner's detention will match or exceed the length of time he spent in prison. The nature of the crime weighs against petitioner as he and his codefendant another armed themselves with a knife,

REPORT AND RECOMMENDATION - 7

attacked a sleeping person, and cut his leg and hand. In addition to this criminal conviction, petitioner has also been convicted of Driving under the Influence on four separate occasions. *See* Dkt. 10 Arnett Decl. The Court concludes factors three and four weigh against a finding petitioner's detention is unreasonable and he should be granted a bail hearing.

### 4. *Conditions of Detention*

Petitioner raises no claims regarding the conditions of his detention at NWIPC. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [the] argument that he is entitled to a bond hearing." *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quoted source omitted). This factor thus favors petitioner.

### 5. *Delays in Removal Proceedings*

The sixth and seventh factors ask the Court to consider "the nature and extent of any delays in the removal proceedings caused by the petitioner and the government, respectively." *Martinez*, 2019 WL 5968089, at *10. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Liban M.J.*, 367 F. Supp. 3d at 665 (citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")). Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his [or her] incarceration." *Ly*, 351 F.3d at 272; *see also Sopo*, 825 F.3d at 1218 ("Evidence that the [noncitizen] acted in bad faith or sought to deliberately slow the proceedings in hopes of

obtaining release cuts against the [noncitizen]."). Thus, this factor weighs against finding detention unreasonable when a noncitizen "has 'substantially prolonged his stay by abusing the processes provided,'" but not when he "simply made use of the statutorily permitted appeals process." *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)); *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 297 n.7 (W.D.N.Y. 2019). With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous*, 2018 WL 2357266, at *11 (citing *Demore* and *Reid*).

The record shows petitioner's conduct has delayed his removal proceedings. Petitioner asked for a bond hearing and a hearing was set for March 2019. He then withdrew his request, and now asks for a bond hearing (or release) some twenty months later. In May 2019, petitioner denied removability requiring briefing to be ordered and the setting of a hearing in June 2019. But rather than following through with his denial, petitioner conceded he was removable.

There is nothing in the record indicating respondents have engaged in conduct that has delayed petitioner's removal proceedings. Petitioner's filed an appeal to the BIA on September 14, 2020 and thus the appeal has not been pending for a very long time.  Accordingly, the sixth and seventh factors weigh in respondent's favor.

      6.     *Likelihood Removal Proceedings Will Result in a Final Order of Removal*

Finally, the Court considers "the likelihood that the removal proceedings will result in a final order of removal." "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Martinez*, 2019 WL 5968089, at *10; *Sajous*, 2018 WL 2357266, at

*11. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous* and *Demore*). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Reid*, 819 F.3d at 400-500).

The record shows petitioner conceded the charges of removability. However, petitioner has applied for an adjustment to status and the denial of the application is pending before the BIA. In light of the paucity of information, the Court declines to weigh the likelihood of petitioner's success and therefore finds this factor neutral.

*Weighing the Factors*

Each party has three factors in their favor and one factor is neutral. The Court thus concludes petitioner's continued mandatory detention without a bond hearing cannot be deemed at this point to be unreasonable and that a bond hearing should not be ordered at this time.

For the foregoing reasons, the Court recommends DENYING petitioner's habeas petition and DISMISSING the case with prejudice.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **January 18, 2021.** The Clerk should note the matter for **January 22, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days

REPORT AND RECOMMENDATION - 10

after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed **seven** pages. The failure to timely object may affect the right to appeal.

DATED this 4th day of January 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge